IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 4, 2025

**ROBERT LEE ADAMS, JR. v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Tipton County**
**No. 10395     A. Blake Neill, Judge**

_____

**No. W2025-00167-CCA-R3-PC**
_____

The Petitioner, Robert Lee Adams, Jr., appeals the Tipton County Circuit Court's denial of his post-conviction petition, seeking relief from his conviction of attempted second degree murder and resulting thirty-year sentence. On appeal, he claims that he received the ineffective assistance of counsel at trial and on direct appeal of his convictions. Based on our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which J. ROSS DYER and STEVEN W. SWORD, JJ., joined.

Joseph B. Simmons, III, Atoka, Tennessee, for the appellant, Robert Lee Adams, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Mark Davidson, District Attorney General; and Sean Hord, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On the morning of November 14, 2020, the Petitioner repeatedly stabbed the victim outside the convenience store where the victim was working. *State v. Adams*, No. W2022-01338-CCA-R3-CD, 2023 WL 5976828, at *1-2 (Tenn. Crim. App. Sept. 14, 2023), *perm. app. denied* (Tenn. Feb. 12, 2024). The victim, covered in blood, managed to walk back into the store. *Id.* at *1. She collapsed inside the doorway, and a co-worker came to her aid and called 911. *Id.*

In March 2021, the Tipton County Grand Jury indicted the Petitioner for attempted first degree premeditated murder. *Id*. At trial, the victim testified that she dated the Petitioner for several years and that she ended their romantic relationship about ten months before the stabbing. *Id*. They lived together as roommates for a time, but she moved out in September 2020. *Id*. On the morning of November 14, the Petitioner arrived at the victim's workplace while she was outside smoking a cigarette and asked if they could "'hook up later on.'" *Id*. at *2. The victim told him no and followed him to her car so she could return some items to him. *Id*. The Defendant told the victim, "'[B*tch], if I can't have you, nobody will.'" *Id*. He then stabbed her twenty-three times, including in her head, neck, back, heart, and kidney. *Id*. He also cut off one of her ears, which doctors reattached, and bit one of her hands. *Id*. The victim was transported to a hospital by helicopter, and the police issued a be-on-the-lookout for the Petitioner. *Id*.

A deputy later stopped the Petitioner's vehicle. *Id*. The Petitioner told the deputy that the victim made him "mad," that he stabbed her, and that he threw the knife out the window of his vehicle. *Id*. at *3. During a police interview, though, the Petitioner said that the victim became angry and that he stabbed her because she pulled a knife on him. *Id*. The Petitioner similarly testified at trial that the victim became angry, that she pulled out a knife, and that he took the knife away from her and began stabbing her. *Id*. at *4. He claimed that he was defending himself and that he was not trying to kill her. *Id*.

The jury convicted the Petitioner of attempted second degree murder, a Class B felony, as a lesser-included offense of attempted first degree premeditated murder. *Id*. at *5. After a sentencing hearing, the trial court sentenced him as a career offender to thirty years in confinement and ordered that he serve the sentence consecutively to a previous sentence. *Id*. On direct appeal of his conviction to this court, the Petitioner mistakenly claimed that the evidence was insufficient to support his conviction of attempted first degree premeditated murder. *Id*. Nevertheless, this court reviewed whether the evidence was sufficient to support the convicted offense. *Id*. at *6. This court said it had "no hesitation" in concluding that the proof was sufficient to support the Petitioner's conviction of attempted second degree murder. *Id*.

After our supreme court denied the Petitioner's Rule 11 application, he filed a timely pro se petition for post-conviction relief. Relevant to this appeal, the Petitioner claimed that he received the ineffective assistance of counsel because trial counsel failed to obtain his cellular telephone, which contained evidence to prove the victim was lying when she claimed that she and the Petitioner were not in a romantic relationship at the time of the stabbing, and because trial counsel failed to investigate his case properly by not obtaining telephone messages, telephone photographs, and business receipts that would have shown he and the victim were still "a couple" when the stabbing occurred. The post-conviction court appointed counsel, and post-conviction counsel filed an amended petition, claiming

- 2 -

that trial counsel also was ineffective because counsel failed to review discovery materials with the Petitioner, met with the Petitioner only two times before trial, and failed to discuss any defense strategies with the Petitioner. Subsequently, post-conviction counsel filed a second amended petition, claiming that appellate counsel was ineffective because counsel challenged the wrong offense on direct appeal of the Petitioner's conviction.

The post-conviction court held evidentiary hearings on October 28 and December 20, 2024. At the first hearing, the Petitioner testified that trial counsel was appointed to represent him and that he did not remember counsel's filing any pretrial motions. He said he would be surprised to learn that trial counsel did file pretrial motions because he and trial counsel did not discuss filing any motions. The Petitioner said trial counsel reviewed "[o]nly a portion" of the discovery materials with him. The Petitioner did not learn about additional discovery materials until the day before trial. The Petitioner said that trial counsel met with him "[l]ike three times" prior to trial and that they never discussed case strategy or defense theories.

The Petitioner testified that trial counsel did not investigate his case properly. For example, the Petitioner and the victim ate at a Chili's restaurant on October 3, 2020, but trial counsel did not obtain the Petitioner's receipt from Chili's. The receipt would have disputed the victim's claims that she had not been with the Petitioner and that he was stalking her. The Petitioner also wanted trial counsel to bring the Petitioner's cellular telephone to the Petitioner in jail. Trial counsel asked for the Petitioner's "code" to open the telephone, but the Petitioner refused to give the code to trial counsel. The Petitioner told trial counsel that he would show trial counsel "hidden information" on the telephone if trial counsel would bring him the telephone, but trial counsel never did so. The telephone contained video of the victim inside the Petitioner's apartment, which would have disputed the victim's claim that he was stalking her, and contained "a lot of back-and-forth texts and messages" that occurred between the Petitioner and the victim from September 19, 2020, to November 2020. The Petitioner said trial counsel also should have obtained records from the Petitioner's employer that would have shown the victim went to his workplace and waited for him and should have obtained records from Albert's Cabin, a motel where the Petitioner and the victim spent time. Post-conviction counsel asked if the Petitioner would be surprised to learn that the defense subpoenaed records from the Petitioner's employer and Albert's Cabin, and the Petitioner said yes. The Petitioner said trial counsel should have obtained a March 2020 police report in which the Petitioner called the police to his apartment because the victim pulled a knife on him. The Petitioner stated that witnesses offered to testify on his behalf about the victim's character, but that trial counsel never asked him about character witnesses.

On cross-examination, the Petitioner acknowledged testifying at trial and admitting to stabbing the victim. He said he stabbed her because she pulled a knife on him and that

- 3 -

some of her wounds could have occurred during her prior relationships. The Petitioner said trial counsel never asked him at trial about the victim's pulling a knife on him, so he never had an opportunity to tell the jury about the incident.[1]

Trial counsel testified for the Petitioner that the Petitioner was in confinement while awaiting trial and that he met with the Petitioner two or three times "at length." He clarified that each meeting lasted "[m]aybe two hours." Trial counsel filed a discovery motion and gave all of the discovery materials he received to the Petitioner. Trial counsel also went over the materials with the Petitioner in person. If trial counsel received any discovery materials late, he may have shown them to the Petitioner the day before trial. Trial counsel said that he and the Petitioner "definitely discussed the defenses," specifically self-defense and voluntary manslaughter, and that they talked about "how the trial would play out." Trial counsel filed motions in limine regarding the 911 call and the Petitioner's prior offenses, but trial counsel did not remember if he discussed the motions with the Petitioner.

Trial counsel testified that part of the Petitioner's defense was that he and the victim "had an on-and-off again relationship, and that she had been contacting him even up until the trial." Trial counsel hired an investigator, and the investigator tried to obtain proof about the relationship from the Petitioner's cellular telephone but was unable to do so. Trial counsel explained, "Part of it was getting the passwords. And for whatever reason, I think what [the Petitioner] testified, for whatever reason, we couldn't get into the phone, and part of it was being damaged. There was a password issue. We were just unable to get the information." Trial counsel did not know if anyone took the telephone to the Petitioner in jail so that the Petitioner could "unlock" the telephone.

Trial counsel testified that subpoenas were issued for the Petitioner's employer and Albert's Cabin but that he did not know if any records were obtained from the subpoenas. It would have been the investigator's responsibility to obtain the records. Trial counsel said he did not remember the Petitioner's telling him about a March 2020 police report or about eating at Chili's with the victim. The Petitioner may have told the investigator, and the investigator may have tried to obtain the information. Trial counsel said he was "sure" he talked with the Petitioner about securing character witnesses for trial. However, if the defense had called character witnesses to testify, then the State also could have called character witnesses. Therefore, the defense ultimately decided not to present any character witnesses.

---

[1] This court's direct appeal opinion belies the Petitioner's claim. According to the opinion, the Petitioner testified that "[t]he victim became angry, hit the [Petitioner] in his mouth, and pulled out a knife. The [Petitioner] grabbed the knife, and they fought over it. Both of them fell, and the [Petitioner] took the knife away from the victim and began 'sticking' her." *Adams*, 2023 WL 5976828, at *4.

On cross-examination, trial counsel testified that he was licensed to practice law in 2008 and that ninety percent of his practice involved criminal defense. He said that he participated in three to five jury trials per year and estimated that he had participated in twenty-five to forty trials by the time the Petitioner went to trial. The Petitioner's trial was not trial counsel's first attempted murder case. Although trial counsel and the Petitioner talked about self-defense, that theory was difficult to argue to the jury because the Petitioner stabbed the victim twenty-three times. Therefore, part of the defense's strategy was to obtain a conviction for a lesser-included offense such as voluntary manslaughter. Trial counsel acknowledged that the jury found the Petitioner guilty of attempted second degree murder as a lesser-included offense of attempted first degree murder. Trial counsel's preparation for trial included filing motions in limine. The motions successfully prevented the jury from hearing that the Petitioner committed another stabbing about an hour before he stabbed the victim and from hearing part of the 911 call that mentioned stalking.

At the second evidentiary hearing, appellate counsel testified for the Petitioner that he had been practicing law for twenty years and doing appellate work for fifteen years. He said that the Petitioner's trial was "really clean" so that the only issue to raise on appeal was sufficiency of the evidence. Appellate counsel "prepped" the Petitioner's appeal to argue that the evidence was insufficient to support a conviction of attempted first degree murder. However, the jury had found the Petitioner guilty of attempted second degree murder. Appellate counsel stated, "And for whatever reason, I didn't go back and change that. So, I just missed it." He said that addressing the correct convicted offense "probably would have been slightly more effective."

On cross-examination, appellate counsel acknowledged that this court analyzed whether the evidence was sufficient to support attempted second degree murder and ruled against the Petitioner. Therefore, appellate counsel's mistake did not affect the result of the Petitioner's appeal.

On January 8, 2025, the post-conviction court entered an order denying the petition. First, the post-conviction court addressed trial counsel's failure to obtain the Petitioner's cellular telephone and investigate the Petitioner's relationship with the victim. The post-conviction court concluded that the Petitioner's claim of ineffective assistance of counsel failed for two reasons: (1) the Petitioner did not present the evidence from his telephone at the post-conviction hearing and, therefore, he could not show prejudice and (2) the Petitioner could not show a reasonable probability that the outcome would have been different even if trial counsel had impeached the victim's credibility because the Petitioner stabbed the victim twenty-three times. The post-conviction court noted that trial counsel testified that he hired an investigator and that he and the investigator were unable to discover any evidence to support the Petitioner's claim that the Petitioner and the victim

were still in a relationship at the time of the stabbing. Thus, the post-conviction court concluded that the Petitioner was not entitled to relief on this issue.

Next, the post-conviction court addressed the Petitioner's claim that trial counsel did not file any pretrial motions and did not review discovery with the Petitioner. The post-conviction court accredited trial counsel's testimony that he received discovery and that he reviewed the materials with the Petitioner in jail. The post-conviction court stated that the Petitioner did not present any proof to show what discovery materials he did not receive and did not present any proof to show how he was prejudiced by not receiving the evidence before trial. Accordingly, the post-conviction court again concluded that the Petitioner was not entitled to relief.

Finally, the post-conviction court addressed the Petitioner's claim that trial counsel failed to prepare a defense, failed to investigate witnesses to testify for the defense, and failed to meet with the Petitioner. The post-conviction court concluded that the Petitioner was not entitled to relief because he failed to present any of the witnesses at the evidentiary hearing to establish prejudice and because trial counsel and the Petitioner both testified that trial counsel met with the Petitioner. The post-conviction court determined that the Petitioner failed to show trial counsel was ineffective but did not address the complaint regarding appellate counsel.

## ANALYSIS

On appeal, the Petitioner contends that the trial court erred in denying his petition for post-conviction relief because trial counsel was ineffective for failing to meet with him adequately, which deprived him of his right to be involved in his own defense; failed to notify him when trial counsel filed motions and failed to notify him about the outcome of the motions, which deprived him of the opportunity to contribute and understand defense strategy; failed to disclose discovery materials, which deprived him of the ability to make informed decisions about his case; and failed to investigate and obtain evidence, such as the Chili's receipt, video from his telephone, and records from his employer and Albert's Cabin, to show that he and the victim were still in a relationship and to dispute any claims that he had been stalking her. The Petitioner contends that appellate counsel was deficient because counsel filed an appellate brief in which he argued that the evidence was insufficient to support attempted first degree murder rather than attempted second degree murder. The State argues that the post-conviction court properly denied the petition. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The

petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *Phillips*, 647 S.W.3d at 400 (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those

choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

As to the Petitioner's claim that trial counsel was ineffective for failing to meet with him, the post-conviction court concluded that the Petitioner was not entitled to relief because trial counsel and the Petitioner both testified that trial counsel met with the Petitioner. Specifically, trial counsel testified that he met with the Petitioner two or three times and that each meeting lasted about two hours. The Petitioner has not explained how trial counsel's not meeting with him more often prejudiced his case. Therefore, the record supports the post-conviction court's findings and conclusion that he is not entitled to relief on this issue.

Regarding trial counsel's failure to notify him about pretrial motions and failure to disclose discovery materials, the post-conviction court accredited trial counsel's testimony at the hearing and concluded that the Petitioner failed to demonstrate prejudice. Trial counsel testified that he filed pretrial motions, including a discovery motion, and that he reviewed discovery materials with the Petitioner in person. Again, the Petitioner has not explained how he was prejudiced by trial counsel's failure to inform him about any pretrial motions and has not explained what discovery materials he did not receive or how prejudiced by not receiving the materials. Thus, the record does not preponderate against the findings and conclusion of the post-conviction court.

As to the Petitioner's claim that trial counsel failed to investigate and obtain evidence, such as the Chili's receipt and video from his cellular telephone, the post-conviction court correctly concluded that the Petitioner was not entitled to relief because he failed to present the evidence at the hearing. Without the evidence, the Petitioner cannot show he was prejudiced by trial counsel's failure to present the evidence at trial. Moreover, even if the evidence would have shown that the Petitioner and the victim were still in a romantic relationship at the time of the crime, the Petitioner has failed to explain how that circumstance would have changed the outcome of his trial. We note that despite stabbing the victim twenty-three times, including in her head, back, and heart, the jury found him guilty of attempted second degree murder as a lesser-included offense.

Similarly, although not addressed by the post-conviction court in its order denying relief, the Petitioner has failed to explain how appellate counsel's arguing the wrong convicted offense on direct appeal of his conviction changed the outcome of his appeal. Granted, appellate counsel's arguing the wrong offense constituted deficient performance. However, this court addressed whether the evidence was sufficient to support the convicted offense of attempted second degree murder and had "no hesitation" in concluding that the evidence was sufficient to support the conviction. Accordingly, the record does not preponderate against the post-conviction court's finding that the Petitioner failed to establish prejudice on this issue.

## CONCLUSION

Upon review, we affirm the post-conviction court's denial of the petition for post-conviction relief.

s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE